UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEOTIS L. THOMPSON,<br>    Petitioner,<br>    v.<br>B. GOWER, Warden,<br>    Respondent. | Case No. 14-cv-01106-VC (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Deotis L. Thompson has filed a federal habeas petition challenging the validity of his conviction, following a jury trial, of two counts of possession of cocaine base for sale and one count of transporting cocaine base. He claims he was denied the right to effective assistance of trial counsel because his lawyer failed to: impeach a witness with a prior inconsistent statement; submit a renewed motion to disclose the identity of a confidential informant; and object during the prosecutor's closing argument. Because Thompson's trial counsel did not provide ineffective assistance, the petition is denied.

## BACKGROUND

In July 2010, Thompson was convicted by a jury of two counts of possession of cocaine base for sale and one count of transporting cocaine base. Court Transcript ("CT") 328-330. He was sentenced to ten years, eight months in prison. CT 554-55.

Thompson appealed to the California Court of Appeal. On December 10, 2012, in an unpublished opinion, the court upheld the conviction, but reversed the sentence and remanded with directions for the trial court to determine whether Thompson had the ability to pay attorneys' fees. Ex. 9, *People v. Thompson*, 2012 WL 6107376, *18-19 (Cal. Ct. App. Dec. 10, 2012). On March 20, 2013, the California Supreme Court denied review. Exs. 10, 11.

On June 20, 2013, Thompson filed a petition for a writ of certiorari in the United States

Supreme Court, which was denied on October 7, 2013. Exs. 12, 13.

On March 10, 2014, Thompson filed this federal petition for a writ of habeas corpus, which is now fully briefed on the merits.

The state court of appeal summarized the facts that are relevant to Thompson's claims as follows:

On October 29, 2007, Officer Michael O'Neil monitored a telephone call in which Thompson agreed to sell narcotics at an apartment complex on McGuinness Street. Undercover officers then observed Thompson driving his car, engaging in counter-surveillance techniques used by drug traffickers. After Thompson pulled into the parking lot of the apartment complex, officers initiated a traffic stop. Thompson's girlfriend, Crystal Gates, was a passenger in the car.

Officers searched the car and found a plastic baggie under the center console containing over twenty-one grams of cocaine, packaged in a manner that would allow it to easily break off into little pieces to sell. O'Neil testified as an expert in the recognition of cocaine base and the possession for sale of cocaine base. He testified that the amount of drugs recovered in Thompson's vehicle indicated that they were for sale because a street user would not possess such a large quantity. Thompson's defense was that the drugs belonged to his passenger, not to him.

On January 2, 2009, officers searched Thompson's apartment and found evidence that he was selling cocaine. Thompson, 2012 WL 6107376, at *1-2.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case, the highest court to issue a reasoned decision on Thompson's claims is the California Court of Appeal.

## DISCUSSION

### I. Federal Authority on Ineffective Assistance of Counsel

To prevail on a Sixth Amendment claim for ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1410-11 (2011); *Premo v. Moore*, 131 S.Ct. 733, 740 (2011). The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

### II. Failure to Impeach Officer O'Neil

#### A. Background

At Thompson's pretrial hearing, Officer O'Neil testified that a confidential informant told him that Thompson was currently in possession for sale of controlled substances. At Thompson's

3

trial, O'Neil testified that he knew Thompson was in possession of controlled substances for sale from monitoring a telephone call in which Thompson agreed to sell narcotics. During closing argument, the prosecutor frequently referred to the telephone call monitored by O'Neil. *Thompson*, 2012 WL 6107376, at *12.

Thompson argues that, at his trial, his attorney should have impeached O'Neil with his prior inconsistent statement that he learned of Thompson's drug activities from an informant, not from monitoring a telephone call. Thompson argues that O'Neil's trial testimony, which came as a surprise to his attorney, undermined his defense that the cocaine in the car belonged to his passenger, and that challenging O'Neil's credibility was important to support this defense.

The Court of Appeal denied this claim as follows:

> Here, the officer testified prior to trial that the informant told him that defendant was currently in possession of drugs for sale, and he testified at trial that he had monitored a call in which defendant agreed to sell cocaine base. Since the officer's trial testimony was not necessarily inconsistent with that at the pretrial hearing, trial counsel could have reasonably concluded that both statements were accurate, and that further questioning would have had little effect on the officer's credibility. More importantly, had trial counsel questioned Officer O'Neil about his prior testimony, the jury would have learned that a confidential informant had described defendant as a drug dealer in possession of narcotics. This testimony, which was corroborated by the fact that defendant was found with cocaine base, would have provided the jury with further evidence of defendant's guilt. Since trial counsel may have had a reasonable tactical reason for not questioning Officer O'Neil about his prior statement, her performance was not deficient.

*Id.*

**B. Analysis**

As the Court of Appeal reasonably found, counsel's performance was not deficient because tactical reasons supported his decision not to delve further into the question of how the police knew that Thompson possessed drugs for sale. Most importantly, at the trial, no mention had been made of a confidential informant and, had counsel impeached O'Neil with his pretrial testimony, the jury would have learned of previously unknown evidence corroborating Thompson's guilt. *See Dows v. Wood,* 211 F.3d 480, 487 (9th Cir. 2000) (counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions,

4

1    are given great deference); *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981) (a difference
2    of opinion as to trial tactics does not constitute denial of effective assistance).

3    Furthermore, it is not reasonably probable that, had trial counsel attempted to impeach O'Neil, the jury would have returned a different verdict. O'Neil's pretrial and trial testimony was not so different as to call into question his credibility. Had counsel raised the issue of O'Neil's different statements it is unlikely the jury would have believed O'Neil lied and returned a verdict of not guilty. Therefore, Thompson has not demonstrated that he was prejudiced by counsel's failure to impeach O'Neil.

**III. Failure to Renew Motion to Disclose Identity of Confidential Informant**

**A. Background**

After the prosecution argued that probable cause for Thompson's arrest was provided by a confidential informant, trial counsel filed a pretrial motion for disclosure of the informant's identity. 4 RT 122. After hearings in open court and in camera, the trial court concluded that "nondisclosure of the identity of the confidential informant will not deprive the defendant of a fair trial. And the court finds that the confidential informant is not a material witness on the issue of guilt or innocence." *Id.*; *Thompson*, 2012 WL 6107376, at *7. Thompson appealed this decision and the Court of Appeal found "that the trial court did not err in concluding that the informant was reliable and that the officer had probable cause to arrest defendant." *Id.* at *8. And, after reviewing the sealed transcript of the in camera hearing, the Court of Appeal concluded, "the confidential informant was not a material witness since he was neither a participant in nor an eyewitness to the charged offenses. Thus, the trial court properly denied defendant's motion to disclose the identity of the confidential informant." *Id.*

Thompson does not assert a habeas claim based on the state court's denial of the first motion for disclosure. Instead, he argues that counsel was ineffective for failing to submit a renewed motion for disclosure because O'Neil's testimony about the monitored phone call showed that the informant participated in the call and this gave Thompson the right, pursuant to *Rovario v. United States*, 353 U.S. 53 (1957), to obtain the informant's identity as a material witness. He argues that knowledge of the confidential informant's identity would have allowed him to

5

1  investigate an entrapment defense, to question how O'Neil knew that it was Thompson's voice on
2  the phone and to determine whether O'Neil's description of the phone call was accurate.

### B. Analysis

In *Roviaro*, the Supreme Court held that where the government opposes disclosure of the identity of an informant, a trial judge must balance the public's interest in protecting the flow of information against the individual's right to prepare his defense. *Id.* at 62. The petitioner bears the burden of showing "that he has more than a mere suspicion that the informant has information which will prove relevant and helpful or will be essential to a fair trial." *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993) (internal quotes and citation omitted). In *Rovario*, the informant actually witnessed the defendant's crimes. 353 U.S. at 63-64.

Because the trial court heard in camera testimony on Thompson's first motion for disclosure of the informant's identity, it presumably received all the information about the informant's involvement in Thompson's arrest, including any involvement in the monitored phone call. Therefore, even had counsel cited *Rovario* in a renewed disclosure motion based on the same facts previously presented to the court, it would undoubtedly have been denied. Counsel did not render deficient performance by failing to bring a futile motion. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take a futile action can never constitute deficient performance).

Furthermore, counsel's decision not to renew the motion was not prejudicial. As discussed above, in light of the trial court's denial of the first disclosure motion, it is likely a renewed motion also would have been denied. Furthermore, as pointed out by the Court of Appeal, Thompson's argument that the confidential informant could provide evidence of an entrapment defense is meritless because no evidence supported such a defense under California law and, in any event, an entrapment defense contradicted Thompson's defense that the drugs did not belong to him. *Thompson*, 2012 WL 6107376, at *13. In addition, had defense counsel called the informant as a witness, the informant's testimony could have been more damaging than helpful to Thompson. For instance, the informant would presumably have testified that Thompson was a drug dealer and possessed cocaine base for sale on the day in question. Even if the informant's testimony differed from O'Neil's in some details about the telephone call, such discrepancies

1  would be overshadowed by Thompson's actual possession of drugs on the day in question. Thus,
2  even if a renewed motion had been granted, Thompson cannot show there is a reasonable
3  probability that the outcome of the trial would have been different. *See Strickland*, 466 U.S. at
4  694.

### IV. Failure to Object to Prosecutor's Argument

**A. Background**

The trial court admitted evidence of Thompson's prior conviction to prove knowledge and intent. 7 RT 217-18.[1] Thompson argues that defense counsel was ineffective because he failed to object to the prosecutor's closing argument that the prior conviction showed Thompson's propensity to commit the charged offenses.

The Court of Appeal rejected this claim as follows:

> During argument, the prosecutor made several references to defendant's prior Nevada conviction, including the following: "How else do we know that the defendant knew of the presence of two large rocks of cocaine base in his car? *The prior conviction*. You will get an instruction that allows you to consider the prior conviction for two ways. Knowledge and intent. *The prior conviction*, the fact that he was convicted of sales, trafficking, and possession for sale of cocaine base once before gives him the knowledge." (Italics added.) "How do we know the defendant knew that the rocks that were in his car were cocaine base? Well, *the prior conviction*." (Italics added.) . . . ."*The prior conviction* and the '07 case tell you that he knows what crack is. Now, the last element I must prove to you is that in the January 2nd case when the defendant possessed these 21 individually packaged baggies of cocaine base he intended to possess them for sale. How do we know this? *Prior conviction*." (Italics added.) Given that the trial court properly admitted evidence of the prior convictions, trial counsel was not ineffective for failing to object to these portions of the prosecutor's argument.
>
> However, the prosecutor made several subsequent references to defendant's prior convictions without referring to the limited purpose for which the jury could consider this evidence. Later in her argument, the prosecutor stated: "Your job is to determine what's the truth. . . . And the truth is that the defendant in November of 2001 *committed the same type of crime, possession for sale of cocaine base, sale of cocaine base, and trafficking cocaine base*. And the truth is that six years later, because the first incident

---

[1]Thompson appealed the trial court's ruling, which was upheld by the California Court of Appeal. *Thompson*, 2012 WL 6107376, at *8-11. Thompson does not raise this claim in this habeas petition.

7

happened in '07, he committed the same act, possession for sale." (Italics added.) "[I]f you haven't listened to anything else, this is *the most important aspect of this trial, the most important pieces of evidence: the defendant's prior conviction* and that monitored phone call that Officer O'Neil testified to." (Italics added.) "*The prior conviction* tells you the defendant is guilty. The evidence overwhelmingly supports his guilt. Now, those two pieces of evidence alone would be enough to have an abiding conviction." (Italics added.) "Are we to believe [Gates] is this criminal mastermind who did this without him seeing it and she just happens to pick somebody *who has a prior conviction* six years before?" (Italics added.) "Ladies and gentlemen, you have to ask yourselves what has to be true *for the defendant to be not guilty*. What has to be true in this case. . . . And the defendant happened to just not commit these prior convictions? " (Italics added.) "Ladies and gentlemen, that's not what's going on here. This defendant committed the crimes he is charged with. *This is not the first time he has been charged with these crimes. It's not the first time he began selling drugs.* The evidence is overwhelming." (Italics added.) By failing to object to the prosecutor's argument that defendant was guilty of the charged offenses because he had previously committed the same offenses, trial counsel failed to render competent assistance.

The error, however, was not prejudicial. The trial court properly instructed the jury that it could not "consider this evidence [of uncharged offenses] for any other purpose except for the limited purpose of intent and knowledge. Do not conclude from [the uncharged offenses] that the defendant has a bad character or is disposed to commit crime." The trial court also instructed the jury that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys will discuss the case but the remarks are not evidence." It is presumed that "'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.'" (*People v. Morales* (2001) 25 Cal. 4th 34, 47, quoting *People v. Sanchez* (1995) 12 Cal. 4th 1, 70.) Since defendant has not shown that there was a reasonable probability that the result of the trial would have been different if counsel had objected to the improper argument, we reject defendant's claim of ineffective assistance.

*Thompson*, 2012 WL 6107376, at *16-17.

### B. Analysis

The Court of Appeal was not unreasonable to conclude that trial counsel's failure to object to the prosecutor's improper statements was not prejudicial. As the Court of Appeal explained, the jury was instructed that it could not conclude from Thompson's previous conviction that he had a bad character or was disposed to commit a crime. 10 RT 562. The trial court also instructed, "Nothing that the attorneys say is evidence," and "in their opening statements and closing

statements, the attorneys will discuss the case, but the remarks are not evidence." 7 RT 212. These instructions cured any unfairness that might have resulted from the prosecutor's allegedly improper remarks. *See Trillo v. Biter*, 769 F.3d 995, 1000 (9th Cir. 2014) ("We presume that juries listen to and follow curative instructions from judges."); *Darden*, 477 U.S. at 182 (condemning egregious, inflammatory comments by prosecutor, but holding the trial was fair because curative actions were taken by court); *see also Boyde v. California*, 494 U.S. 370, 384 (1990) (counsel's arguments generally carry less weight with a jury than instructions from the court). Therefore, Thompson cannot show that, had counsel objected, there was a reasonable probability that the outcome of the trial would have been different. Given the doubly deferential standard of habeas review of ineffective assistance of counsel claims, the state court's rejection of this claim was not objectively unreasonable. *See Harrington*, 131 S.Ct. at 785.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Thompson's petition for a writ of habeas corpus is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

2. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: April 28, 2015

_____
VINCE CHHABRIA
United States District Judge